ADRIAN WIRE FENCE CO. v. MILWAUKEE WIRE FENCE CO.

(District Court, E. D. Wisconsin. December 4, 1913.)

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—WIRE FENCE TIE.
    The Williams patent, No. 533,403, for a tie for binding together the longitudinal and vertical wires of a wire structure, such as a fence, claim 1, in view of the prior art, is void for lack of invention; also, construed narrowly and limited to the precise construction shown, as it must be if conceded validity, held not infringed.

2. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—DIE FOR FORMING WIRE FENCE TIES.
    The Tiffany patent, No. 755,187, for a die for forming a knot or tie for binding crossing fence wires held void for lack of invention in view of the prior art.

In Equity. Suit by the Adrian Wire Fence Company against the Milwaukee Wire Fence Company. On final hearing. Decree for defendant.

Complainant has filed its bill charging infringement of two patents, No. 533,403, issued to Williams, relating to the tie or knot for securing

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

longitudinal or strand, and vertical or stay wires at points of intersection; also No. 755,187, issued to complainant, assignee of Tiffany, relating to the dies for forming and applying the knot or tie referred to. Alleged infringement of the Williams patent will be first considered. The claims embodied in such patent are:

"(1) The combination in a wire structure, the crossed wires, one of which is bowed to receive the other, with a tie consisting in a staple engaging with its bend, the said bowed wire with its legs crossing the other wire and its points bent around the bowed wire from opposite sides, substantially as described.

"(2) A staple adapted for use as a tie for wire structures, the said staple being longitudinally curved, one member having a greater curvature than the other, whereby the members are decidedly out of alignment at their extremities, the same members being likewise beveled at their extremities upon opposite faces, substantially as and for the purpose specified."

The defendant as a manufacturer of wire fences, uses what in general may be termed a staple fastener on the intersecting wires of its structure. As will be seen, the first claim above covers, in combination, the crossed wires bowed to receive each other with a staple tie; while the second claim is specifically limited to the described form of staple. The defendant in its structure uses a type of staple not subject to the terms of such claim, and hence complainant does not charge infringement thereof.

The defenses are, invalidity and noninfringement.

Rector, Hibben & Davis, of Chicago, Ill., for plaintiff.

Walter H. Chamberlin, of Chicago, Ill., for defendant.

GEIGER, District Judge (after stating the facts as above). [1] The combination presented in claim 1 is expressly declared to contain the elements: (1) The wires, longitudinal and strand, bowed or crimped to engage at the intersecting point; (2) a staple tie whose bend engages the one, and with its legs crossing the other of the wires and bent around the former on opposite sides. Respecting the first of these—while the idea of bowing the wires in *opposite* directions is not embodied in the Caldwell patent, No. 372,060, that inventor clearly had in mind the precise construction here involved, for he expresses his preference thus:

"I prefer to make the bends or crimps * * * of both longitudinal and vertical wires deflect in the same direction, as I am thereby enabled to make the staples or clamps * * * clasp the joint tighter than if they deflect in opposite directions."

Therefore it would seem that, not only was the idea of crimping or deflecting—*one way or another*—the intersecting wires of a structure, known or disclosed, but it was known and disclosed as an element in fastening such wires by means of a staple tie; and thus the situation is advanced to the inquiry whether this element is used in combination with another element which, if new, or if old, embodies in either case, invention.

The use of the staple as a means of effecting a knot or tie, being recognized in the prior art, the narrow question is presented whether the particular form of tie which here consists of a staple "engaging with its bend the bowed wire with its legs crossing the other wire and

its points bent around the bowed wire from opposite sides" is an advance upon the prior art to be ascribed to invention or to mechanical skill. Now the Caldwell patent, referred to, does not suggest the type of tie or knot brought forth by Williams, but does recognize a rather advanced state of the art. The later patent, 495,029, to Depew, does, however, approach the structure of the patent in suit in these very particulars: A staple, or clip as it is there called, whose bend engages the vertical wire (corresponding to the "bowed" wire) "with its legs crossing the other wires and its points bent"—in the patent in suit—"around the bowed wire on opposite sides"—in the Depew patent—to re-engage and perfect the tie by twisting upon each other. That is to. say, in the Depew tie, the legs, instead of engaging the vertical wire and bending around it, re-engage and form the knot by twisting around each other. Up to the point, therefore, where the legs of the staple, after bending around the longitudinal wire, and are required either to re-engage the vertical wire, or each other, the two structures embody the same idea. In completing the knot, or tie, it seems to me that the re-engagement of the vertical wire, as indicated in the Williams structure, rather than re-engaging the legs to form a knot by twisting each upon the other, involves really a matter of choice to be exercised upon the promptings of mechanical skill and not inventive faculty. It may be true, as pointed out by complainant, that because of the light wire contemplated to be used in the Depew structure, it is of less efficiency than complainant's structure. But that does not gainsay that it embodies, to the extent just indicated, just what Williams sought to introduce as a form of *locking* intersecting wires. The possible inefficiency of the structure, due to the lightness of the wire and its consequent lack of firmness, obviously suggests that greater efficiency and firmness would result from the use of heavier and less ductile wire; and it would seem evident that the degree of engagement—the amount of knotting, as it were—is wholly dictated by the character of the material used. Thus, in the Depew structure, if a heavy wire were used, sufficient firmness would result from a small amount of twisting, as compared with that necessary in the use of a lighter wire; and, as I view it, the completion of the locking, by merely bringing the legs together without re-engagement, would, if the wire be of sufficient stiffness, involve no other new principle of forming a lock. Although the patents, No. 434,794, to Leggett, and No. 482,908 to Staples, cover structures from which, to the structure in suit, there is a "far cry," as stated by complainant's expert, nevertheless they disclose that by continuing the wire which engages the intersecting wires around, so that it formed a circle or loop, a lock was created which, with tempered or stiff wire, approached, to some degree of effectiveness, the actual tying of a knot. Now this is important only to show that the notion of completing the knot by a lesser degree of engagement than that shown in the Depew structure was not new in the art of fastening intersecting wires, no matter what the structure may be. Indeed, when once given intersecting wires, and the staple with the known methods of engaging such wires with such staple, it is difficult to see why every change in the form or configuration of the knot should be attributed to the exercise of in-

vention. In this aspect, it would seem that the situation is no different than if the inventor were given the intersecting wires and a piece of cord and approached the problem of choosing from the numberless forms of knots that which he deemed most efficient. Thus, where cord of one type is used, a double knot, with another type, a single knot might suffice; so with light and ductile wire, as before remarked, a complex or twisted knot might be deemed necessary, whereas, with tempered or heavy wire, the result might be accomplished by lessening the degree of engagement until practically a link or loop form of tie has been reached.

I conclude that claim 1 contains no elements which singly, or in combination, disclose patentable novelty. This of course renders unnecessary consideration of the defense of noninfringement. From what has been said respecting the state of the art, claim 1, if valid, could in no event be of great breadth; and, if sustainable at all, in my judgment, must be limited to the precise form of *sharp-pointed* staple configured as exhibited in the drawings. This the defendant does not infringe.

[2] Upon the other branch of the case, the alleged infringement of the Tiffany die patent, the only defense is invalidity for want of novelty. If the claims are valid, defendant infringes. At the date of application for the patent, June 19, 1903, the art of die making had reached a high state of development. The reference to patents to Lamb, No. 628,986; to Hoxie, No. 641,699; to Lamb & Hoxie, No. 646,435, to Lamb & Hoxie, No. 646,497—all issued during the years 1899 and 1900, disclose dies for making knots or ties of simple and complex forms. One of them, 646,497, to Lamb & Hoxie (sheet 3), exhibits a loop knot substantially like the Williams tie which we have considered; and in this connection we may note the testimony given by Tiffany, which strongly tends to show that, although a patent was issued to him, he originally had no thought of having invented a die, but a new form of *knot,* and was evidently deterred from claiming such knot to be patentably novel because of the Williams patent. In other words, he regarded his activities in respect of the die he was making, as being within the field of mechanical skill and judgment.

But aside from this, the ideas of two part dies with channels for receiving the crossed wires, the employment of staples to make a knot, the possibilities of many forms of knots made by variations in the grooves or recesses of the dies into which the staples were driven, were well known; and, as pointed out respecting the Williams patent, it cannot be that, with each change in the form of the channels, grooves, or recesses, with no substantial change in function, with no different result except of configuration, the inventive faculty, and not mechanical skill or judgment, was exercised.

I am of opinion that the advance, if any, made in the Tiffany over the prior art dies, was not due to invention, and the patent is void.

A decree may be entered dismissing the bill.